# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

|  |  |
|---|---|
| IN THE MATTER OF THE SEIZURE OF CERTAIN FUNDS AND ASSETS ASSOCIATED WITH EHC MEDICAL OFFICES, PLLC | NO. 3:18-MJ-2207 — 3:18-MJ-2244<br><br>**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT** |

### AFFIDAVIT OF CRYSTAL CENTERS AND ATTACHMENT TO APPLICATION FOR A WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, Crystal Centers, being duly sworn depose and state as follows:

1.     I have been a Special Agent of the Internal Revenue Service Criminal Investigation (IRS CID) since May 2002 and am a Federal Law Enforcement Officer pursuant to Rule 41(a)(2)(c).  I am currently assigned to the Lexington Post of Duty.  My responsibilities as a Special Agent include the investigation of potential criminal violations of Internal Revenue Laws, 26 U.S.C. § 7201 et seq.; the Foreign Bank Secrecy Act, 31 U.S.C. § 5324; the Money Laundering Control Act, 18 U.S.C. §§ 1956 & 1957; Asset Forfeiture, 18 U.S.C. §§ 981, 982 and 984; as well as drug related offenses pursuant to 21 U.S.C. § 841 et seq., as it relates to money laundering offenses; and firearm offenses pursuant to 18 U.S.C. § 924(c).

2.     I have conducted or assisted in conducting over 50  investigations of criminal violations of the Internal Revenue Laws under 26 of the U.S.C.; various Bank Secrecy Act violations under 31 of the U.S.C.; and money laundering violations under 18 of the U.S.C. and related offenses.  In these investigations, I have worked with the Federal Bureau of

1

Investigation (FBI), Bureau of Alcohol, Tobacco and Firearms (ATF), Drug Enforcement Agency (DEA), Secret Service, United States Postal Inspection Service, and various state and local law enforcement agencies.

3.      I graduated from Eastern Kentucky University in 2002 with a BA in Accounting.  I graduated from the Criminal Investigator Training Program at the Federal Law Enforcement Center in Glynco, Georgia in October of 2002 and from the Special Agent Investigative Techniques Program at the National Criminal Investigation Training Academy in February 2003.  I have attended various training courses at the Federal Law Enforcement Training Center, which provided training in a wide variety of investigative techniques including surveillance, search warrants, arrest warrants, armed escorts, undercover operations, consensual monitoring, and the legal standards of probable cause as well as many other techniques.

4.      I have participated in the execution of numerous search and seizure warrants. These warrants covered the search of locations ranging from residences of targets and their persons, their associates and relatives, and places of business. I have also testified before the Federal Grand Jury regarding the manner in which individuals launder proceeds from Specified Unlawful Activities.

**BACKGROUND ON UNLAWFUL PROCEEDS AND MONEY LAUNDERING**

5.      Based upon my training and experience with money laundering and narcotics investigations, combined with the knowledge and information concerning narcotics and narcotics investigations provided by other law enforcement officers, I know that individuals involved in the unlawful distribution of controlled substances commonly profit and amass

2

proceeds from the sale of drugs. In order to protect their illegal activity and be able to utilize their drug profits, they attempt to disguise and legitimize these profits. One way that such individuals attempt to disguise or legitimize proceeds of unlawful activity is by transferring fund between multiple accounts or entities, whether held in the individual's name, a fictitious name, or another's name. I also know that it is common for these individuals to combine or commingle unlawful proceeds with other, legitimate proceeds in an effort to conceal the origin of the unlawful proceeds and to avoid detection of the underlying unlawful activity. Finally, I also know that it is common for such individuals to engage in transactions with unlawful proceeds in excess of $10,000. *See* 18 U.S.C. § 1957.

## BACKGROUND ON INVESTIGATION

6. I have been participating in an investigation of EHC Medical Offices, PLLC, a purported substance abuse treatment provider in Eastern Tennessee, for approximately 2 years. Throughout this investigation, I have worked in tandem with the Special Agents and Task Force Officers from the Drug Enforcement Administration (DEA) Diversion Group Task Force with over 50 years of combined narcotics investigating experience. Generally, our investigation has focused on the suspected unlawful distribution of buprenorphine (including Suboxone) and other controlled substances from EHC between 2014 and the present. Our investigation has revealed that EHC and its associated doctors have amassed significant proceeds from EHC's operations.

7. The information in this affidavit is based on my personal investigation, as well as information provided to me by Jared Sullivan, Special Agent DEA and other law enforcement officers involved in this investigation, my review of law enforcement reports

3

and my discussions with other law enforcement agents, confidential sources, and other witnesses.

## REQUESTED WARRANTS

9.     Pursuant to 21 U.S.C. §§ 853(f) and 881(a)(6), as well as 18 U.S.C. §§ 981 and 982, I am applying for a warrant authorizing the seizure of property subject to forfeiture. Specifically, the requested seizure warrant would authorize the seizure of property: (1) that is subject to forfeiture because it constitutes proceeds of the unlawful distribution of controlled substances in violation of 21 U.S.C. §§ 841 and 846; and/or (2) that is involved in violations of federal money laundering statutes, 18 U.S.C. §§ 1956 and 1957. To the extent that the Subject Funds are not the actual monies traceable to or involved in the illegal activities identified herein, the government alleges that these funds are identical property found in the same account as the property traceable to or involved in the illegal activities, rendering these funds subject to forfeiture pursuant to 18 U.S.C § 984.

10.     Because this affidavit is made for the purpose of securing authorization for the seizure warrants referenced herein, I have not included every fact known to me concerning this investigation. Rather, I have only set forth the facts which I believe are necessary to support the request to seize certain property.

11.     This affidavit is submitted in support of application for seizure warrants for the following property:

a. Funds on deposit in BB&T Bank, Account # 117813940 in the name of Express Health Care PLLC
b. Funds on deposit in BB&T Bank, Account # 117813932 in the name of Express Health Care PLLC
c. Funds on deposit in BB&T Bank, Account # 117561666 in the name of Robert Taylor MD, up to the amount $8,668,263.98

4

d.  Funds on deposit in BB&T Bank, Account # 125885128 in the name of Dr. Robert E. Taylor MD
e.  Funds on deposit in BB&T, Account # 117561445 in the name of Robert Taylor MD and Lori Barnett
f.  Funds on deposit in BB&T Bank, Account # 126521383 up to the amount of $954,449.98 in the name of Direct Primary Care of Mobile Inc.
g.  Met Life Annuity in the name of Robert E Taylor and/or any trusts held in the name of Robert E Taylor up to $3,590,000
h.  National Financial Services investment accounts held in the name of Robert E Taylor or any trusts held in the name of Robert E Taylor
i.  Funds in RBC Wealth Management investment accounts held in the name of Robert E Taylor or any trusts held in the name of Robert E Taylor, up to the amount of $22,528,380 (plus any interest and earnings on this amount)
j.  Fidelity International Asset Investment Management investment accounts held in the name of Robert E Taylor or any trusts held in the name of Robert E Taylor
k.  WFG Investments Inc investment accounts held in the name of Robert E Taylor or any trusts held in the name of Robert E Taylor
l.  Funds on deposit in Capital One Bank, Account # 125264059 up to the amount $3,446,090.01, in the name of Evann and Tracie Herrell
m.  2014 Jeep Wrangler Rubicon with VIN: 1C4BJWFG6EL234579 bearing TN License MY9711 registered to Evann and Tracie Herrell
n.  2015 Dodge Ram 3500 with VIN: 3C63RRKL6FG508984 bearing TN License J259988 registered to Evann and Aethann Herrell
o.  Funds on deposit in First Tennessee Bank, Account # 185736902 up to the amount $ $2,300,249.35 in the name of Mark and Carolyn Grenkoski
p.  2016 Porsche Cayenne with VIN: WP1AA2A28GLA06665 bearing TN License E6953G registered to Mark and Carolyn Grenkoski
q.  Funds held in Robert W Baird and Company Investment accounts in the name of Mark Grenkoski, up to the amount of $20,000 (plus any interest and gains)
r.  Funds held in a Banner Life Insurance policy in the name of Mark Grenkoski, up to the amount of $3,790
s.  Funds on deposit in Bank of America, Account #444014166428 in the name of Matthew and Farris Rasberry
t.  Funds on deposit in Bank of America, Account #444016192720 in the name of Matthew and Farris Rasberry
u.  Funds held in a Merrill Lynch Simplified Employee Pension Plan in the name of Matthew Rasberry, up to the amount of $107,000 (plus interest and earnings on this amount)
v.  Funds on deposit in Home Federal Bank of Tennessee, Account #299263, up to the amount of $432,229.79 in the name of Eva Misra DBA Eva Misra MD
w.  Funds on deposit in Mountain Commerce, Account #10129880, up to the amount of $237,567.58 in the name of Eva Misra

5

x. Funds on deposit in ORNL Federal Credit Union, Account # 2633010, up to the amount of $523,940 in the name of Helen Bidawid

y. Funds on deposit in First National Bank of Oneida, Account # 501825 up to the amount of $40,458 in the name of Stanley and Susan Swindell

z. Funds on deposit in Andrew Johnson Bank, Account #74538737, up to the amount of $903,425.01, in the name of Stephen Cirelli

aa. Funds on deposit in Eastman Credit Union, Account # 100792888, up to the amount of $253,826 in the name of Morgan McClain

bb. Funds on deposit in Chase Bank, Account #9212372604, in the name of Danny Robinson

cc. Funds in Ivy Investment accounts held in the name of Danny Robinson, up to the amount of $4,124.97 (plus any associated earnings or interest on that amount)

dd. Funds in Pershing Brokerage LLC investment accounts held in the name of Danny Robinson, up to the amount of $50,500 (plus any associated earnings or interest on that amount)

ee. Northwestern Mutual investment accounts held in the name of Danny Robinson, up to the amount of $132,041.04

ff. Funds in Waddell & Fiduciary Trust Company accounts held in the name of Danny Robinson, up to the amount of $6,874.95 (plus any associated earnings or interest on that amount)

gg. Funds on deposit in Iberia Bank, Account # 20000990337, up to the amount of $91,497.57 in the name of BMFL Enterprises LLC

hh. Funds on deposit in Iberia Bank, Account # 3000103824, up to the amount of $77,000 in the name of BMFL Enterprises LLC

ii. Funds in Pershing Brokerage investment accounts held in the name of Bobby Lee and/or BMFL Enterprises LLC, up to the amount of $52,813.50 (plus any associated earnings or interest on that amount).

jj. Funds in Northwestern Mutual investment accounts held in the name of Bobby Lee and/or BMFL Enterprises LLC, up to the amount of $3,744 (plus any associated earnings or interest on that amount)

kk. Funds on deposit in Knoxville TVA Employee Credit Union, Account #65314696-70 in the name of Erin Hood up to the amount of $89,672.10

ll. Funds on deposit in United Community Bank, Account #1310, in the name of Robert Dukes up to the amount of up to $210,909

## **LEGAL FRAMEWORK**

12.     Pursuant to 21 U.S.C. § 841(a)(1), it is a criminal offense for any person to knowingly or intentionally distribute or dispense a controlled substance except as authorized by law. Controlled substances must be prescribed "for a legitimate medical

6

purpose by an individual practitioner acting in the usual course of his professional practice," 21 C.F.R. § 1306.04 (a). An order purporting to be a prescription that is not in the usual course of professional treatment is not a valid prescription. A physician violates the authority to prescribe controlled substances pursuant to 21 U.S.C. § 841(a)(1) et. seq., when the controlled substance is not being used for the treatment of a patient but rather for the purpose of assisting in the maintenance of a drug habit or the dispensing of controlled substances for other than a legitimate medical purpose. Pursuant to Title 21 C.F.R. § 1306.07, a practitioner may administer or dispense directly (but not prescribe) a narcotic drug listed in any Schedule to a narcotic drug dependent person for the purpose of maintenance or detoxification treatment if the practitioner meets both the following conditions: (1) the practitioner is separately registered with DEA as a narcotic treatment program, and (2) the practitioner is in compliance with DEA regulations regarding treatment qualifications, security, records, and unsupervised use of the drugs pursuant to the Act.

13. Title 21, Code of Federal Regulations, Section 1306.04(a) provides, "[a] prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21

7

U.S.C. 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances."

## PROBABLE CAUSE

14.     This Affidavit sets forth the factual basis for the requested seizure warrants, but does not attempt to detail the evidence uncovered in the broader investigation of EHC and related individuals. Instead, I hereby incorporate the facts set forth in the Affidavit of DEA Special Agent Jared Sullivan, which has been simultaneously submitted in support of applications for search warrants related to this investigation.

15.     The government's investigation has shown that EHC has not operated as a legitimate medical facility since its inception. Instead, EHC and its physicians have consistently issued controlled substance prescriptions outside the course of professional practice and not for a legitimate prescription. Accordingly, I respectfully submit there is probable cause to believe that EHC's earnings during the time period under investigation constitute the proceeds of the unlawful distribution of controlled substances in violation of 21 U.S.C. § 841(a). Accordingly, proceeds from EHC's operations are subject to forfeiture. *See* 21 U.S.C. §§ 853(f)[1] and 881(a)(6). Furthermore, as outlined below, investigators have

---

[1] With respect to seizure, 21 U.S.C. § 853(f) specifically provides that a court may issue a criminal seizure warrant when it "determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that a[] [protective] order under [21 U.S.C. § 853(e)] may not be sufficient to assure the availability of the property for forfeiture." I respectfully submit that there is a substantial risk that the accounts and assets identified herein will be withdrawn, moved, dissipated, or otherwise become unavailable for forfeiture unless immediate steps are taken to secure them at the time the requested searches are executed. As outlined below, my investigation has shown that many of the subjects under investigation have frequently transferred or otherwise

8

identified funds that have been involved in likely money laundering activities in violation of 18 U.S.C. §§ 1956 and/or 1957. As such, any funds involved in those transactions are also subject to forfeiture under 18 U.S.C. §§ 981 and 982.

16.     As outlined below, investigators have traced the proceeds of EHC's unlawful activity to a number of financial accounts and assets. To do so, investigators obtained records from a variety of sources, including banks and other financial institutions. From these records, investigators have identified and analyzed the principal accounts used by EHC during the time period under investigation. Investigators have also identified and analyzed a number of additional accounts, including the accounts used by Dr. Robert Taylor (EHC's founder and owner) and a number of other related individuals and entities.

17.     Much of the analysis described below involved tracing the flow of funds from EHC's accounts into and through a variety of other financial accounts (largely bank accounts and investment accounts). Except where otherwise noted, I believe the funds identified below are traceable to proceeds of EHC's unlawful activity. To reach this conclusion, I have endeavored to use reasonable tracing methodologies to identify the funds identified below as proceeds of unlawful activity. *See, e.g.*, *United States v. Banco Cafetero Panama*, 797 F.2d 1154 (2d Cir. 1986) (approving the government's use of certain accounting assumptions to trace tainted funds).

---

moved funds between accounts and assets. Further, given the nature of most financial accounts (and the ease with which they can be accessed over the internet), it would be very easy for these targets to move, withdraw, or otherwise dissipate these funds on short notice. I therefore submit that a protective order under 21 U.S.C. § 853(e) would be insufficient to assure that these accounts and assets will remain available for forfeiture.

9

18.     While we cannot know for certain that every one of EHC's transactions involved unlawful activity, the unlawful activity so permeated EHC's business model that any allegedly legitimate business could not have existed if not for the unlawful activity. *See United States v. Warshak*, , 329-33 (6th Cir. 2010) (all proceeds of the defendant's business, even potentially legitimate ones, were held forfeitable because the business was "permeated with fraud"); *United States v. Farkas*, Case No. 1:10-cr-200, 2011 WL 10550596, *8-10 (E.D. Va. Oct. 26, 2011) (all proceeds forfeitable as property obtained "directly or indirectly" from the criminal activity because business would not have been solvent but for infusion of proceeds of illegal activity), aff'd 474 F. App'x 349, 359-60 (4th Cir. 2012). Even if every prescription for controlled substances issued by EHC physicians was not illegitimate or outside of the course of professional practice, it is clear that so many were that any legitimate medical treatments would not have been possible if not for the illegimate ones.

19.     For the Court's convenience, I set forth a summary of our analysis of these accounts and assets below, beginning first with EHC's accounts, then discussing accounts and assets associated with some of EHC's staff and physicians:

**A.     EHC Accounts**

20.     During the course of this investigation, I have utilized records from various sources including the Tennessee Secretary of State. The Tennessee Secretary of State provides information regarding businesses organized in the state of Tennessee. The Tennessee Secretary of State maintains a website which provides the public with access to business information maintained by the Secretary of State. The website is searchable by the

10

public by either business name or by an individual name which may be associated with a business. The website provides information for the business such as the Articles of Incorporation, Articles of Organization, annual reports, changes in the organization, and dissolution documents. A search was conducted through the public records maintained on the Tennessee Secretary of State website for businesses associated with ROBERT TAYLOR. According to these records ROBERT TAYLOR, with an address of 223 Spring Water Lane, Knoxville, Tennessee, has the following business and business status listed with the Secretary of State:

| Organization | Date Organized | Status |
|---|---|---|
| EHC Medical Offices PLLC (formerly Express Health Care PLLC) | 1/11/2013 | Active |

21.     According to filings and public records maintained by the Tennessee Secretary of State, EHC Medical Offices PLLC (formerly Express Health Care Medical PLLC) initially filed with the Secretary of State on January 11, 2013. The business' Principal Address is currently listed as 2305 N Gateway Avenue Unit 4, Harriman, TN 37748. This is the same address as one of the EHC clinics. The Registered Agent Address is listed as EHC Medical Offices PLLC, 223 Spring Water Lane, Knoxville, TN 37934. This is the same address as ROBERT E TAYLOR's personal residence. A deed with the Knox County Clerk's verifies ROBERT E TAYLOR owns the residence located at 223

11

Spring Water Lane, Knoxville, TN. This business is listed as Active on the Tennessee Secretary of State website.

22.     Investigating agents obtained records from BB&T and Regions Bank to identify bank accounts associated with ROBERT TAYLOR and/or EHC Medical Offices PLLC. The following bank accounts have been identified (to date) relating to TAYLOR's personal accounts and accounts related to EHC.

| Account Name | Account # | Bank | Signors on Account | Referenced Names per Affidavit |
|---|---|---|---|---|
| Express Healthcare PLLC | 117813932 and xxx3940 | BB&T | Robert Taylor Lori Barnett | EHC-3932 EHC-3940 |
| Express Healthcare | 180479308 | Regions Bank | Robert Taylor MD | EHC-9308 |
| Robert Taylor MD | 117561666 | BB&T | Robert Taylor | RT-1666 RT-6117 |
| Dr. Robert E. Taylor MD | 125885128 | BB&T | Robert Taylor | RT-5128 |
| Lori Barnett & Robert Taylor MD | 117561445 | BB&T | Robert Taylor MD Lori Barnett | LB-1445 |
| Direct Primary Care of Mobile Inc | 126521383 | BB&T | Robert Taylor EJ Saad Lori M Barnett | DPC-1383 |

23.     Investigating agents prepared deposit analyses for the above accounts. These analyses are based on bank records obtained from the above-named banks. Between February 18, 2014 and April 2018, the cash deposited into the above accounts totaled over $35 million for the two EHC clinics located in Harriman, TN and Jacksboro, TN. The

12

following is a summary of the deposits in EHC's main operating account (EHC-3932) for

the years ending 2014, 2015, 2016, 2017, and 2018:

| | 2014 | 2015 | 2016 | 2017 | 2018 | Total |
|---|---|---|---|---|---|---|
| **Merchant Deposits** | $917,655.74 | $1,823,786.50 | $1,926,434.09 | $1,885,669.45 | $683,028.65 | $7,236,574.43 |
| **Vault Safe Credit-Harriman** | $892,744.00 | $5,379,330.00 | $3,617,236.00 | $2,389,981.17 | $707,267.00 | $12,986,558.17 |
| **Vault Safe Credit-Jacksboro** | $128,124.00 | $5,915,178.00 | $5,700,489.00 | $3,817,753.47 | $1,217,171.50 | $16,778,715.97 |
| **Cash** | $1,965,903.50 | $27,496.00 | $0 | $0 | $0 | $1,993,399.50 |
| **Money Orders** | $27,851.74 | $65,966.50 | $31,723.41 | $4,140.00 | $0 | $129,681.65 |
| **Other** | $0 | $1,675.50 | $0 | $0 | $0 | $1,675.50 |
| **Total** | $3,932,278.98 | $13,213,432.50 | $11,275,882.50 | $8,097,544.09 | $2,607,467.15 | $39,126,605.22 |

24.     ***BB&T Account # 117813932***.  Between February 18, 2014 and April 30,

2018, EHC's operations generated $39,126,605.22 that was deposited in EHC's operating

account, EHC-3932.  (Note that "merchant deposits" represent credit card payments and

vault safe credits are cash deposits at the respective clinics at Harriman, Tennessee and

Jacksboro, Tennessee.)  Each clinic has a safe where the cash is deposited and later picked

up by a Brinks truck.  The total amount of cash deposited into the EHC-3932 operating

account during this time period was $31,758,673.  Eighty-one percent of the total deposits

into the EHC-3932 operating account were cash deposits.  Interviews as well as undercover

13

visits at the clinic have verified the clinic mostly accepts cash for the individual's appointments.

25.     Before using EHC-3932 as its operating account, EHC had an operating account held at Regions Bank, account #xxxx9308 (EHC-9308).  Between January 1, 2014 through March 30, 2014.  The table below summarizes the deposits into this account (EHC-9308) during this time period:

|  | 2014 |
|---|---|
| Cash | $ 1,527,012.00 |
| Money Orders | $ 3,234.00 |
| Merchant Deposits | $ 118,635.00 |
| Other | $ 5,625.00 |
| Total | $ 1,654,506.00 |

This account was closed on March 30, 2014, so I do not request a warrant for the seizure of this account.

26.     **_BB&T Bank Account # 117813940._**  Typically, money was transferred from EHCs operating account, EHC-3932, to EHC's payroll account EHC-3940.  But our analysis also revealed that additional cash and money orders were also deposited into EHC's payroll account, EHC-3940, during 2014.   The table below summarizes the deposits into EHC-3940 between February 28, 2014 through April 30, 2018:

|  | 2014 | 2015 | 2016 | 2017 | 2018 | Total |
|---|---|---|---|---|---|---|
| Cash | $ 1,896,900.01 | $0 | $0 | $0 | $0 | $ 1,896,900.01 |

14

| | | | | | |
|---|---|---|---|---|---|
| **Money Orders** | $ 27,687.30 | $0 | $0 | $0 | $0 | $ 27,687.30 |
| **Transfers from EHC-3932** | $ 40,868.58 | $ 5,390,214.64 | $ 4,636,700.08 | $3,744,604.00 | $ 798,500.00 | $14,610,887.30 |
| **Transfer from Regions Bank** | $ 889,987.90 | $0 | $0 | $0 | $0 | $ 889,987.90 |
| **Total** | $ 2,855,443.79 | $ 5,390,214.64 | $ 4,636,700.08 | $3,744,604.00 | $ 798,500.00 | $17,425,462.51 |

27.    Between 2014 and April 2018, over $42 million was deposited in the three EHC accounts (EHC-3932, EHC-3940, and EHC-9308) listed in the above tables. Based on the information uncovered in this investigation, these proceeds are traceable to the illegal drug activity occurring at the two EHC clinics. Given that money is transferred in and out of the accounts, ascertaining the precise balance of the accounts on the date on which a seizure warrant would be effected is difficult. Given that each account is funded exclusively by proceeds from EHC (and that our investigation has shown that EHC proceeds have been regularly placed in these accounts over the course of several years), there is probable cause to seize any funds that are in EHC-3932 and EHC-3940 on the date the requested warrants are executed.

**B.    EHC Physicians' and Staff's Accounts and Assets**

28.    As noted, our investigation indicates that the money paid from EHC to its owner, Robert Taylor, and other individuals associated with EHC constitute the proceeds of the illegal distribution of controlled substances in violation of 21 U.S.C. § 841(a). As

15

outlined below, investigators have traced these proceeds into a number of financial accounts and have also identified assets purchased with those proceeds.

### 1. Accounts Related to Dr. Robert Taylor

29.    ***BB&T Bank, Account # 117561666***.  As noted, Taylor's primary personal account was a BB&T Bank account, RT-1666.  Based on our analysis, it appears Taylor transferred proceeds from EHC to his personal account, EHC-1666, in three primary ways:

    (a) *First*, Taylor transferred large sums of money from EHC's operating account, EHC-3932, to his personal account EHC-1666.   Between February 2014 and April 2018, TAYLOR transferred a total of $16,785,994.52 directly into his personal bank account at BB&T (RT-1666) from EHC's operating account (EHC-3932).

    (b) *Second*, a review of EHCs accounts revealed that Taylor received a bi-weekly paycheck from EHC.  Those paychecks totaled $450,417 from January 2014 through June 2018 and were each deposited in his personal account, RT-1666.

    (c) *Third*, Taylor also transferred funds from EHC's *payroll* account, EHC-3940, to his personal account.  Records indicate that Taylor transferred $471,852.46 from EHC's payroll account (EHC-3940) into his personal account RT-1666.

Because all of these sums constitute proceeds from EHC's unlawful activity, we have identified a total of $17,708,263.98 in unlawful EHC proceeds that were deposited into RT-1666.  As discussed below, however, investigators have traced certain purchases, transfers, and expenditures totaling $9,040,000 by Taylor from RT-1666 using these proceeds.  Accordingly, I am only requesting a warrant authorizing the seizure of up to $8,668,263.98

16

from RT-1666, which accounts for the transfers and assets we are seeking to seize listed in the paragraphs below.

30. ***BB&T Bank Account #125885128***. TAYLOR also had another personal bank account at BB&T, account #xxxx5128 (RT-5128). This account was opened on December 9, 2014. On December 10, 2014, $1,487,545 in cash was deposited into this account. The source of this cash is unknown at this time. (An interview has not been conducted at the BB&T bank branch where the cash was deposited to avoid alerting Taylor of the current investigation.) Accordingly, for purposes of this affidavit, I do not believe this $1,487,545 came from EHC's operations. After the initial cash was deposited into the RT-5128 account, there were several large dollar transfers back and forth between the RT-5128 account and RT-1666 (Taylor's personal account identified in Paragraphs 19 and 23 above). The total amount transferred from RT-5128 to RT-1666 was $2,750,000 (this includes funds that originated from RT-1666 to begin with) and the total amount transferred back to RT-5128 from RT-1666 was $1,512,265. The transfers ceased on March 28, 2016. The only activity in RT-5128 since March 28, 2016 are monthly interest payments. The current balance of RT-5128 as of March 20, 2018 was $250,330.68.

31. It should be noted that around the time Taylor transferred funds from RT-5128 to RT-1666, Taylor would also make additional deposits into RT-1666 from EHC's account (EHC-3932). Checks were then written from RT-1666 to Met Life and/or NFS as outlined herein. However, because funds became comingled, it is difficult to differentiate between the illegal proceeds and the potential legal funds being used to write checks to Met Life and/or NFS. Moreover, based on my training and experience, I believe the transfers

17

between RT-5128 and RT-1666 are suspicious because of the volume of transfers back and forth between the accounts (and the absence of any obvious explanation for transferring the same funds back and forth between the accounts). I believe there is a reasonable probability this is evidence that Taylor was commingling EHC funds with the funds initially deposited in RT-5128. Based on my training and experience, I know that individuals will often comingle legitimate and illegitimate funds as a way to hide the true source and location of their illegal proceeds. Accordingly, I submit there is probable cause to seize the funds currently remaining in RT-5128 (and the funds that transferred from that account back into RT-1666) because those funds are (1) proceeds of EHC's unlawful activity, and (2) involved in a money laundering transaction in violation of 18 U.S.C. §§ 1956, 1957.

32.     As noted, Taylor often transferred large sums of money from the EHC-3932 bank account to his personal account, RT-1666. Within days of the proceeds being transferred into Taylor's personal bank account, RT-1666, the money was then transferred to National Financial Services (NFS) and/or Met Life Annuity.

33.     *Met Life Annuity In the Name of Robert E Taylor*.     Based on the bank records analyzed to date, TAYLOR transferred a total of $3,590,000 to a Met Life Annuity account from his personal account, RT-1666, between January 2015 and October 2016. I respectfully seek authority to seize up to that amount ($3,590,000) from Met Life as proceeds of EHC's unlawful activity and/or funds involved in one or more money laundering transactions. For the Court's reference, below is a breakdown of the checks written from RT-1666 account to Met Life Annuity:

| Date | Payee | Check # | Amount | Memo Line |
|------|-------|---------|--------|-----------|

18

| | | | | |
|---|---|---|---|---|
| 01/15/2015 | Met Life | 1015 | -$200,000.00 | L610103793 |
| 03/11/2015 | Met Life | 1031 | -$200,000.00 | L610103793 |
| 04/01/2015 | Met Life | 1022 | -$300,000.00 | L610103793 |
| 05/01/2015 | Met Life | 1025 | -$220,000.00 | Met life annuity |
| 05/14/2015 | Met Life | 1027 | -$220,000.00 | Met Life Annuity |
| 08/03/2015 | MetLife | 1040 | -$200,000.00 | Met Life Annuity |
| 08/24/2015 | Met Life | 1044 | -$200,000.00 | Met Life Annuity L610103793 |
| 09/14/2015 | Met Life | 1093 | -$200,000.00 | Met Life Annuity |
| 01/15/2016 | Met Life | 1106 | -$200,000.00 | Met Life Annuity |
| 02/26/2016 | Met Life | 1112 | -$200,000.00 | Met Life Annuity |
| 04/01/2016 | Met Life | 1053 | -$200,000.00 | Met Life Annuity |
| 05/06/2016 | Met Life | 1118 | -$300,000.00 | Met Life Annuity |
| 06/06/2016 | Met Life | 1068 | -$200,000.00 | Met Life Annuity |
| 07/12/2016 | Met Life | 1074 | -$150,000.00 | Annuity |
| 08/23/2016 | Met Life | 1080 | -$200,000.00 | L610103793 |
| 09/13/2016 | Met Life | 1087 | -$200,000.00 | L610103793 Met Life Annuity |
| 10/18/2016 | Met Life | 1089 | -$200,000.00 | L610103793 |

34. ***National Financial Services Accounts/Fidelity International Accounts/ WFG Investments Inc. Investment Accounts***. Our analysis revealed that Taylor moved a significant amount of money from his personal account, RT-1666, to a series of trust and investment accounts. These various accounts (identified in particular below), are held by

Fidelity, National Financial Services (NFS),[2] and or WFG Investments, Inc. Our investigation indicates that these entities are related in some fashion. For instance, Taylor wrote a total of $4,704,000 in checks from RT-1666 to NFS during the timeframe under investigation. The information noted in the memo line of these checks reference several different account located at NFS. Below is a breakdown of the checks written from RT-1666 account to National Financial Services:

| Date | Payee | Check # | Amount | Memo |
|---|---|---|---|---|
| 11/12/2014 | NFS Attn: Mark Baggerly | 975005 | $52,000.00 | |
| 12/17/2014 | NFS | 1008 | $500,000.00 | Trusts |
| 01/15/2015 | NFS | 1016 | $100,000.00 | Living Trust Tax Portfolio |
| 01/15/2015 | NFS | 1017 | $100,000.00 | IDGT |
| 01/15/2015 | NFS | 1018 | $200,000.00 | MM & Bond Funds for Living Trust |
| 01/15/2015 | NFS | 1019 | $53,000.00 | 2013 SEP 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 KH4-229194 SEP |
| 03/11/2015 | NFS | 1032 | $100,000.00 | Living trust tax mag part |
| 03/11/2015 | NFS | 1033 | $50,000.00 | IDGT |
| 04/01/2015 | NFS | 1024 | $70,000.00 | Living Trust |
| 04/01/2015 | NFS | 1023 | $150,000.00 | money market/short term bonds |
| 04/30/2015 | NFS | 1026 | $50,000.00 | Living Trust |
| 05/13/2015 | NFS | 1028 | $50,000.00 | Living Trust |

---

[2] I know from open source research that NFS is a part of Fidelity Investments and serves as one of the largest providers of brokerage services in the United States.

| | | | | |
|---|---|---|---|---|
| 08/03/2015 | NFS | 1041 | $50,000.00 | WYC 004596 |
| 08/03/2015 | NFS | 1042 | $50,000.00 | WYC 004600 |
| 08/24/2015 | NFS | 1045 | $50,000.00 | WYC-004596 |
| 08/24/2015 | NFS | 1046 | $50,000.00 | WYC-004600 |
| 09/14/2015 | NFS | 1092 | $100,000.00 | Acct: WYC-004596 |
| 01/14/2016 | NFS | 1107 | $50,000.00 | Money Market Acct KH4230695 |
| 02/26/2016 | NFS | 1113 | $120,000.00 | Money market |
| 02/26/2016 | NFS | 1114 | $52,000.00 | SEP-KH4229194 |
| 03/31/2016 | NFS | 1054 | $100,000.00 | NFS Acct WYC 004596 |
| 05/09/2016 | NFS | 1120 | $100,000.00 | WYC-004600 |
| 05/09/2016 | NFS | 1119 | $100,000.00 | WYC-004600 |
| 06/06/2016 | NFS | 1069 | $50,000.00 | WYC-004596 |
| 07/12/2016 | NFS | 1075 | $50,000.00 | WYC-004596 |
| 08/10/2016 | NFS | 1081 | $100,000.00 | WYC-004596 |
| 09/13/2016 | NFS | 1088 | $50,000.00 | WYC-004596 |
| 11/14/2016 | NFS | 3001 | $200,000.00 | WYC-004596 |
| 12/21/2016 | NFS | 3003 | $180,000.00 | WYC-004596 |
| 03/14/2017 | NFS | 3017 | $150,000.00 | Acct: WYC-004600 |
| 04/17/2017 | NFS | 3018 | $100,000.00 | WYC-004596 |

| | | | | |
|---|---|---|---|---|
| 04/18/2017 | NFS | 3019 | $125,000.00 | |
| 08/09/2017 | NFS | 3051 | $50,000.00 | Acct# EHM 00Z468 |
| 08/09/2017 | NFS | 3052 | $400,000.00 | EHM-004282 |
| 09/26/2017 | NFS | 3059 | $200,000.00 | EHM-002482 |
| 12/12/2017 | NFS | 3067 | $400,000.00 | EHM-002482 |
| 12/12/2017 | NFS | 3068 | $100,000.00 | EHM-002468 |
| 03/14/2018 | NFS | 3073 | $52,000.00 | 2018 SEP KH4-522-004628 |
| 03/14/2018 | NFS | 3074 | $200,000.00 | KH4-SZZ-004494 |
| Total | | | $4,704,000.00 | |

35.    Investigators believe that this approximately $4.7 million was then transferred

into various trust and investment accounts associated with Fidelity.  Investigating agents

have located the following additional investment accounts held by Taylor in records

obtained from Fidelity International Asset Investments Management, LLC:

22

| | Account Number | Name on Account |
|---|---|---|
| Fidelity International Assets Investment Management, LLC | EHM-002468 | Robert E Taylor Revocable Inter Vivos Trust |
| Fidelity International Assets Investment Management, LLC | EHM-002482 | Robert E Taylor Irrevocable Trust |
| Fidelity/NFS | EP7-090417 | Premier Select SEP IRA through Euro Pacific Capital Inc |
| WFG Investments, Inc. | KH2-034726 | Robert E Taylor IDGT Irrevocable Trust |
| Fidelity/NFS | KH4-229194 | Premier Select SEP IRA |
| WFG Investments, Inc. | KH4-230695 | Robert E Taylor Revocable Inter Vivos Trust |
| Internationa Assets Advisory (IAA) | SZ2-004494 | Robert E Taylor Revocable Inter Vivos Trust |
| NFS/FMTC Internationa Assets Advisory (IAA) | SZ2-004628 | Robert E Taylor Premier Select SEP IRA |
| WFG Investments, Inc. | WYC-004596 | Robert E Taylor Revocable Inter Vivos Trust |
| WFG Investments, Inc. | WYC-004600 | Robert E Taylor IDGT Irrevocable Trust |
| Fidelity/NFS | WYF-000722 | Robert Taylor Premier Select SEP IRA |

Based on my analysis of these records, I know the following about each of these accounts:

a) Account EHC-002468 (Fidelity): Based on the Fidelity records, this account consisted of transfers from NFS (KH2-034726 & WYC-004596). The funds in this account were then transferred to Royal Bank of Canada. However, it is unknown if additional funds have been deposited into this account

b) Account EHM-002482 (Fidelity): Based on the Fidelity records, this account consisted of transfers from NFS (KH2-034726). The funds in this account were then transferred to Royal Bank of Canada. However, it is unknown if additional funds have been deposited into this account.

c) Account EP7-090417 (Fidelity/NFS): Based on the Fidelity records, this account was transferred to Acct KH4-229194 on April 2014, leaving a 0 balance as of May 2014. However, it is unknown if additional funds have been deposited into this account.

d) Account KH2-034726 (WFG Investments): Based on the Fidelity records, on April 19, 2017 $584,400.46 was transfer from NFS WYC-004600 into this account. Between August-October 2017, the stocks were converted to cash and moved to Fidelity accounts EHM-002468 and #EHM-002482 (items a) and b) above) leaving a $0.00 balance in this account. However, it is unknown if additional funds have been deposited into this account.

23

e) Account KH4-229194 (Fidelity/NFS): Stocks in this account were sold and transferred to SZ2-004628.

f) Account KH4-230695 (WFG Investments): Stocks were sold and transferred to SZ2-004494

g) Account SZ2-004494 (IAA): Based on the Fidelity records, this account consisted of transfers from KH4-230695. On August 2018, the stocks were converted to cash and transferred to Royal Bank of Canada. It is unknown if additional funds have been deposited into this account.

h) Account SZ2-004628 (NFS/FMTC): Based on the Fidelity records, this account consisted of transfers from KH4-229194. Then stocks were converted to cash and transferred to Royal Bank Canada.

i) Account WYC-004596 (WFG): Based on the Fidelity records, $50,000 was transferred from KH4-230695 into this account. Then the stock was transferred to EHM-002468.

j) Account WYC-004600 (WFG): Based on the Fidelity records, $50,000 was transferred from KH4-230695. Then the stock was transferred to KH2-034726.

k) Account WYC-000772 (Fidelity): Based on the Fidelity records, $100,000 was transferred from KH4-229194. Then the stocks were sold and transferred back to KH4-229194.

As noted below, investigators believe most of the funds transferred into these accounts were eventually transferred into accounts at the Royal Bank of Canada, with the exception of approximately $75,000. Given that money has been transferred in and out of the accounts with some frequency during the time period under investigation, ascertaining the precise balance of the accounts on the date on which a seizure warrant would be served is difficult. However, I respectfully submit there is probable cause to believe that any funds located in these accounts are proceeds derived from EHC, given that our investigation has revealed a

24

consistent pattern of Taylor depositing EHC proceeds in these accounts over the course of several years.[3]

36. ***RBC Wealth Management Accounts***. Based on my investigation, the majority of the $4.7 million deposited into these various accounts was eventually transferred into one or more accounts at the Royal Bank of Canada. Specifically, a balance of approximately $75,000 remains in the Fidelity accounts, indicating that the remaining $4,625,000 was transferred to account at Royal Bank of Canada. Accordingly, the United States requests a warrant authorizing the seizure in that amount (plus earnings and interest on that amount) from Royal Bank of Canada.

37. On November 27, 2018, investigators became aware of at least one internet article, dated November 20, 2018, which stated that EHC had been sold to an entity called Crossroads Holding LLC. Open source research further indicates that Crossroads Holding LLC is a portfolio company of Revelstoke Capital Partners, a Denver-based private equity firm.[4]

38. Consistent with the foregoing, investigators have received additional information which suggests that EHC may have been acquired and that Dr. Taylor was paid more than $18 million for the practice by the acquiring entity.

39. Specifically, information obtained from BB&T on December 12, 2018, including wire transfer records, show that on November 14, 2018, Taylor received a wire

---

[3] As explained below, there is also probable cause to believe that some of the funds placed in these accounts were transferred to these investment accounts after being repeatedly commingled with non-EHC funds. *See* 18 U.S.C. § 1956.
[4] Note that investigators have not observed any changes in EHC's day-to-day staffing or operations.

25

transfer into account RT-1666[5] in the sum of $18,928,100. The beneficiary listed in the wiring documentation is Robert E. Taylor. The originating entity (meaning the paying entity) is listed as "TREATMENT CENTERS HOLDCO LLC." The originating bank is listed as Bank of America. BB&T records also show another wire transfer from the same entity (TREATMENT CENTERS HOLDCO LLC) in the amount of $38,200 on the same date, November 14, 2018.

40.     Open source research indicates that TREATMENT CENTERS HOLDCO, LLC is affiliated with Crossroads Holding LLC (the acquiring entity listed above). An open source database shows that Rupert McCormac is listed as the CEO of both entities. Open source research also shows that both entities have listed a common address in South Carolina: 55 Beattie Place, Greenville, South Carolina 29601. Moreover, my review of records from BB&T Bank account RT-1666 found no other multi-million dollar incoming wire transfers or deposits. Based on this information, including the close timing between the wire transfer and the article announcing the EHC acquisition, I believe that the wire transfer from "TREATMENT CENTERS HOLDCO LLC" further corroborates that Crossroads Holding LLC acquired EHC, as has been publicly reported, and that the funds wired were payment for the acquisition.

41.     BB&T records also show that Taylor then wired $17,903,380 to an RBC Capital Markets account on November 15, 2018. Specifically, the wiring records state the transfer was "FBO" (for the benefit of) "ROBERT E. TAYLOR REVOCABLE INTER

---

[5] As outlined in my prior affidavit, Dr. Taylor's primary personal account has been a BB&T Bank account, RT-1666. Based on our analysis, Dr. Taylor has consistently transferred proceeds from EHC to his personal account, EHC-1666.

VIVOS REVOCABLE TRUST, UA DATED 8/20/2014 RBC CLIENT ACCOUNT
NUMBER 7R4-01862."

42.     On December 12, 2018, I further obtained information from a representative
with RBC that confirmed $17,903,380 was received on November 15, 2018 and applied to
account number 7R4-01862.  A few days later, approximately $3 million dollars was
transferred out of this account and deposited into account numbers 7R4-08798 and 7R4-
01976.  The representative confirmed ROBERT E TAYLOR currently has four accounts at
RBC with the following balances:

| Account # | Balance |
|---|---|
| 7R4-08798 | $6,324,090 |
| 7R4-08920 | $533,916 |
| 7R4-01862 | $14,466,107 |
| 7R4-01876 | $1,753,879 |
| Total | $23,077,992 |

43.     Based on the information obtained from RBC, we know $4,625,000
referenced above was deposited into account at RBC and the $17,903,380.   Accordingly, I
am requesting a seizure warrant at RBC up to the amount of $22,528,380 (plus any earnings
and interest on this amount).

44.     ***BB&T Bank Account #117561445***.  Taylor and Lori Barnett, a nurse and
office manager at EHC (who has been identified as integral to EHC's operations) also have
a joint personal account held at BB&T account #xxxx1445 (LB-1445).  Records received
from BB&T show this account was opened February 24, 2014.  The majority of the deposits

27

into this account are Barnett's bi-weekly payroll checks from EHC. Barnett has also received end-of-the-year bonuses in the amount of $50,000 during the years 2014, 2015, 2016, and 2017. She also received reimbursement for mileage from EHC. Barnett has no other sources of employment income being deposited into this account (LB-1445). The ending balance as of March 14, 2018 was $175,884.49. I am requesting a warrant to seize the funds in this account because they constitute proceeds of EHC's unlawful activity. Given that money is transferred in and out of the accounts, ascertaining the precise balance of the accounts on the date on which a seizure warrant would be effected is difficult. But given that the account is funded exclusively by proceeds from EHC (and that our investigation has shown that EHC proceeds have been regularly placed in these accounts over the course of several years), there is probable cause to believe that any funds in the account on the date the requested warrants are properly subject to forfeiture.

45. ***BB&T Bank Account # 126521383***. Our analysis also revealed that Taylor transferred $954,449.98 from EHC's operating account (EHC-3932) to a BB&T account titled in the name of Direct Primary Care of Mobile, Inc. account #xxxx1383, (DPC-1383), between February 24, 2015 and April 6, 2018. The signature card for this account lists Robert Taylor as the President and Lori Barnett, as an authorized signor on this account. The current balance of this account as of April 30, 2018 was $249,370.48. Because these funds were transferred from EHC's operating account (EHC03932), they are proceeds of unlawful activity and subject to forfeiture. To account for any potentially legitimate funds also placed in this account, however, the government only seeks to seize up to $954,449.98 (the total amount of EHC proceeds deposited in this account) from this account. In the

28

event there are funds in excess of that figure on the day the requested warrant is served, those excess funds will not be subject to seizure.

46.    A review of bank records, loan documents, public records and interviews have shown that Taylor purchased multiple assets since he opened the EHC clinics. The money used to purchase these assets is traceable to proceeds received from Taylor's illegal activity at EHC. The investigator traced these proceeds by obtaining records from the businesses where some of the assets were purchased and by analyzing the deposits being made into Taylor's business and personal bank accounts. As noted, the proceeds traced to these assets have been credited toward the amount requested to be seized from Taylor's personal account RT-1666. Accordingly, I set forth my analysis relating to these assets below purely to provide the Court with an understanding of the amounts being credited to RT-1666:

(a) *Pensacola Condo*.    Taylor purchased a condominium in Pensacola, Florida. To do so, he wired $144,966.47 from his BB&T personal account RT-1666 as down payment and made five large electronic payments ($77,744.25, $52,744.25, $102,744.24, $72,173. 59) from his personal account at BB&T, RT-1666, totaling $408,149.58.    These payments were made shortly after large deposits were made into RT-1666 from EHC's operating account ECH-3932.

(b) *Knoxville Residence*.    Records from Mortgage Investors Group indicate that on May 1, 2014, TAYLOR purchased his personal residence located at 223 Spring Water, Knoxville, TN for $581,000.    He obtained a mortgage at

29

Mortgage Investors Group in the amount of $417,000. He used an Official Check from his personal BB&T account, RT-1666, in the amount of $171,885.69 written to Admiral Title as the down payment on 223 Spring Water. On June 1, 2014, the loan was transferred to Pingora Asset Management. Records received from Pingora Asset Management indicate Cenlar Mortgage actually services the loan. The monthly mortgage payments are made to Cenlar Mortgage from TAYLOR's personal bank account at BB&T, RT-1666. The current balance owed on 223 Spring Water Lane as of July 27, 2018 was $385,452.

### 2. Accounts and Assets Related to Dr. Evann Herrell

47. ***Capital One Bank, Account # 125264059***. Throughout this investigation, investigators have determined there are several doctors that have been employed by TAYLOR at his two EHC clinics since January 2014. Based on the analysis of the payroll account, EHC-3940, the payroll is processed by Automated Data Processing (ADP). Investigators obtained payroll records from ADP pertaining to EHC for the years 2014, 2015, 2016, 2017, and 2018 (through June 2018). Based on the ADP records, Doctor Evann Herrell (Dr. Herrell) has been employed by EHC since at least 2014. Undercover visits at the Jacksboro EHC location have also documented Dr. Herrell as a practicing physician at EHC. Dr. Herrell received direct deposits from EHC into his personal bank account at Capital One Bank, Account # 125264059 (EH-4059). During the years 2014, 2015, 2016, 2017, and 2018, the ADP records and deposits into EH-4059 indicate Dr. Herrell has received the following amounts from his employment at EHC:

30

| Year | Total Amount |
|------|--------------|
| 2014 | $719,640.27 |
| 2015 | $1,169,115.39 |
| 2016 | $893,781.02 |
| 2017 | $634,474.68 |
| 2018 | $298,016.29 |

Between January 2014 and April 2018, Dr. Herrell deposited a total of $3,715,027.65 from the illegal drug activity occurring at EHC into the EH-4059 account. As of August 31, 2018, the ending balance in this account was $62,699.71. The investigation has shown that EHC is not operating a legitimate medical facility, therefore, the proceeds Dr. Herrell received from EHC are traceable to the illegal drug activity at the clinics. Given that money is transferred in and out of the accounts, ascertaining the precise balance of the accounts on the date on which a seizure warrant would be effected is difficult. But given that the account is funded largely by proceeds from EHC (and that our investigation has shown that EHC proceeds have been regularly placed in these accounts over the course of several years), there is probable cause to believe that any funds in the account on the date the requested warrants are served are EHC proceeds. Moreover, as discussed below, however, investigators have traced certain purchases and expenditures by Dr. Herrell using these proceeds. Accordingly, I am only requesting a warrant authorizing the seizure of $3,446,090.01 after credit was given for the assets being sought for seizure as discussed in the paragraphs below. Additionally, the government is limiting the requested seizure to this

31

figure to account for any potentially legitimate funds[6] placed in this account. In the event there are funds in excess of that figure on the day the requested warrant is served, those excess funds will not be subject to seizure.

48. A review of bank records, loan documents, public records and interviews have shown that Herrell purchased multiple assets with the proceeds he made from working at EHC. Investigators traced these proceeds by obtaining records from the businesses where some of the assets were purchased and by analyzing the deposits being made into TAYLOR's business and personal bank accounts.[7] The requested warrant would authorize the seizure of the following specific property:

---

[6] For instance, between January 2014 and May 2014, there were also deposits into this account from Team Health. These deposits ceased after May 2015. Accordingly, while there may have been some other sources of income deposited in this account, the vast majority of funds placed in this account during the relevant time period are EHC proceeds. Accordingly, there is probable cause to believe any funds remaining in the account are EHC proceeds.

[7] Note that on April 23, 2009, Dr. Herrell and his wife, Tracie, purchased a residence located at 266 Moore Drive, Kodak, Tennessee. A deed for the residence was obtained from the Sevier County, Tennessee county clerk's office. The deed listed Dr. Herrell and Tracie as husband and wife. The residence was purchased in the amount of $209,343. The mortgage was originally held by Quickens Loans. The mortgage was then sold to Bank of America and then transferred to Nationstar Mortgage LLC on June 4, 2013. The balance of the mortgage at the time of transfer to Nationstar Mortgage LLC was $165,870.53. The mortgage payments were mostly paid from Dr. Herrell's personal bank account held at Capital One, EH-4059 (referenced in the paragraph above). From January 16, 2014, through June 16, 2017, Dr. Herrell paid $178,937.64 out of EH-4059 toward the mortgage of his residence located at 266 Moore Drive, Kodak, TN. This is the same account into which Dr. Herrell's compensation from EHC was deposited during this same time period. Based on the trust deed release from the Sevier County Clerk's office, the mortgage was paid in full and released on July 12, 2017. This has been credited toward the amount sought to be seized from Dr. Herell's account.

(a) *2014 Jeep Rubicon*.  A database accessible to federal investigators which I have previously used and found to be reliable, shows Evann and Tracie Herrell own a 2014 Jeep Rubicon.  Records obtained from ORNL Federal Credit Union indicate on April 2, 2014, Evann and Tracie Herrell purchased a 2014 Jeep Rubicon, VIN: 1C4BJWFG6EL234579, from Jim Cogdill Dodge Company in the amount of $55124.23.  The records further indicate, Dr. Herrell put a $2,000 cash down payment on the purchased of the Jeep Rubicon.  The remaining amount was financed through ORNL Federal Credit Union.  The majority of the payments were made from Dr. Herrell's personal bank account at EH-4059.  Based on the bank records analyzed for EH-4059, a total of $47,000 was paid to ORNL Federal Credit Union between October 16, 2014 and August 16, 2018 for the loan on the 2014 Jeep Rubicon.  A few of the payments were also made from Dr. Herrell and his wife, Tracie's, bank account at Tennessee State Bank, Account # xxxx6490 (EH-6490).  As of June 30, 2018, the outstanding balance on the Jeep Rubicon was $9,934.20 as of June 30, 2018.  Between January and May 2014, Dr. Harrell received five deposits from Team Health which were deposited into his personal account EH-4059.  He was also receiving payroll payments from EHC during this time.  After May 2015, his only source of income was his payroll payments from EHC.   The funds used to make the payments on Dr. Herrell's 2014 Jeep Rubicon are traceable to proceeds received from the illegal activity at EHC.

33

(b) *2015 Dodge Ram*.  A database accessible to federal investigators, which I

have previously used and found to be reliable, shows that Herrell owns a 2015

Dodge Ram 3500.  Documents received from BB&T indicate Dr. Herrell and

Aethann Herrell (assumed to be Herrell's son), purchased a 2015 Dodge Ram

3500 from Farris Motor Company on June 15, 2015 in the amount of

$69,111.89.  The loan was financed through BB&T bank.  Dr. Herrell was

listed as the primary applicant and Aethann was listed as a co-applicant on the

application for the loan.  The majority of the payments were made from Dr.

Herrell's personal bank account at Capital One, EH-4059.  Based on the bank

records analyzed for EH-4059, between August 17, 2015 and August 16,

2018, Dr. Herrell wrote checks totaling $43,800 to BB&T for the loan on the

2015 Dodge Ram 3500.  The current balance on the Dodge Ram 3500 is

$38,776.34.  As noted, after May 2015, Dr. Herrell's only source of income

being deposited into the bank account used to make payments on the vehicle

were direct deposits from EHC.  Accordingly, the funds used to make the

payments on Dr. Herrell's Dodge Ram 3500 are traceable to proceeds

received from the illegal activity at EHC.

### 3.    Accounts and Assets Related to Dr. Mark Grenkoski

49.    ADP payroll records pertaining to EHC for the years 2014, 2015, 2016, 2017,

and 2018 also identified, Doctor Mark Grenkoski, MD (Dr. Grenkoski) as an employee of

EHC.  These records indicate Dr. Grenkoski has been employed by EHC since at least

2014.  The investigation has revealed that Dr. Grenkoski is historically one of the largest

34

providers of prescriptions and the third largest financial benefactor of the activities occurring at EHC. In addition, Dr. Grenkoski has been identified as the "Medical Director" of the Harriman, TN location. Therefore, Dr. Grenkoski is directly responsible for much of the activities occurring at EHC. The records from ADP further revealed the direct deposits for Dr. Grenkoski from EHC were being deposited into First Tennessee Bank, account #6902 (MG-6902).

50. ***First Tennessee Bank Account # 185736902***. Records received from First Tennessee Bank indicate Dr. Grenkoski received direct deposits from EHC into his personal bank account at First Tennessee Bank, MG-6902. During the years 2014, 2015, 2016, 2017, and 2018, the ADP records and deposits into MG-6902 indicate Dr. Grenkoski has received the following amounts from his employment at EHC:

| Year | Total Amount |
|------|--------------|
| 2014 | $331,944.32 |
| 2015 | $798,369.19 |
| 2016 | $559,636.04 |
| 2017 | $526,397.35 |
| 2018 | $180,524.57 |

51. Between January 2014 and April 2018, a total of $2,396,871.47 was deposited into MG-6902 from the illegal drug activity occurring at EHC. The investigation has shown that EHC is not operating a legitimate medical facility, therefore, the proceeds Dr. Grenkoski received from EHC are traceable to the illegal drug activity at the clinics. As

35

such, the proceeds deposited into MG-6902 are forfeitable up to $2,396,871.47. As of August 31, 2018, the ending balance in this account was $-2.23. However, during the month of August 2018, Grenkoski deposited $61,308.04 into his MG-6902 account, $39,537.13 of which came from the EHC payroll account (EHC-3940).[8] Even though the account had a negative balance at the time of the last records obtained by investigators, I submit that there is nonetheless probable cause to believe EHC proceeds will be found in the account at the time the requested warrant is effected. As noted, investigators have seen that Grenkoski's EHC paychecks have been consistently deposited in this account over the course of several years. Accordingly, there is a fair probability that EHC proceeds will be in the account on the date the requested warrants are served. As with the other accounts above, the requested seizure will be limited to the amount of EHC proceeds, $2,396,871.47, minus the amount of proceeds traced to other assets (including those described below), which amounts to $2,300,249.35.

52. ***Robert W Baird and Company Investment Accounts***. In analyzing the bank records for MG-6902, investigators identified checks written to Robert W. Baird and Company. Records indicate Dr. Grenkoski has a Simplified Employee Pension Individual Retirement Arrangement at Robert W. Baird. Based on the bank records analyzed for MG-6902 and the records received from Robert W. Barid, Dr. Grenkoski wrote two checks for $10,000 each to R.W. Baird and Company in 2016. The first check was written on

---

[8] The majority of the remaining deposits were transfers from another account (MG-8924), which is another account at First Tennessee Bank held in the name of Dr. Grenkoski and his son. The deposits into MG-8924 are transfers from Dr. Grenkoski's, MG-6902 personal account.

36

February 10, 2016 in the amount of $10,000.  Based on the records analyzed for MG-6902,

Dr. Grenkoski received a $26,816.33 deposit from EHC on February 9, 2016.  The second

check was written on April 19, 2016 in the amount of $10,000.  On April 8, 2016, Dr.

Grenkoski received two deposits, $19,508.85 and $33,741.33, from EHC.  The funds used

to make the payments Robert W. Baird and Company are traceable to Dr. Grenkoski's

proceeds he received from the illegal activity at EHC.  Accordingly, at least $20,000 (plus

any interest and gains on that $20,000) in the SEP-IRA are proceeds from EHC's illegal

activity.  As of October 1, 2018, the balance of the SEP-IRA was $232,935.20.[9]

Accordingly, I am requesting a warrant that authorizes the freezing of this account to allow

the eventual forfeiture of $20,000 (plus any interest and gains) from that balance.

     53.    ***Banner Life Insurance Policy Held in the Name of Mark Grenkoski***.  Based

on records analyzed from Dr. Grenkoski's personal account, MG-6902, he also wrote a

check to Banner Life Insurance on May 22, 2014 in the amount of $3,790.  No additional

checks have been located written to Banner Life Insurance.  The funds used to make the

payments to Banner Life are traceable to Dr. Grenkoski's proceeds he received from the

illegal activity at EHC.  Accordingly, I am requesting to seize the $3,790 in EHC proceeds

transferred to this policy.

     54.    ***Assets***.  A review of bank records, loan documents, public records and

interviews have shown that Grenkoski purchased multiple assets using proceeds received

---

[9] Records show that an IRA was transferred to Robert W. Baird and Company on February
2016, with a balance of $169,700.48.  The only investments made since February 2016 are
the two checks totaling $20,000 from MG-6902.  The remaining $43,234.72 are earnings
earned on the $189,700.48.

37

from the illegal activity at EHC.  Investigators traced these proceeds by obtaining records from the businesses where some of the assets were purchased and by analyzing the deposits being made into Grenkoski's personal bank accounts.  The requested warrant would authorize the seizure of the following specific properties:

(a) ***2016 Porsche Cayenne***.  A database accessible to federal investigators, which I have used and found reliable identified Dr. Grenkoski owned a 2016 Porsche Cayenne.   Records received from Bank of America indicate Mark Grenkoski purchased a 2016 Porsche Cayenne from Jim Ellis Porsche on August 16, 2015 in the amount of $55,177.80.  The loan was financed through Bank of America.  The payments for the Porsche Cayenne are being made from Dr. Grenkoski's personal bank account MG-6902.  Dr. Grenkoski's only source of income being deposited into this bank account was his direct deposits from EHC from the illegal activity occurring at EHC.  Based on an analysis of this account, the main source of deposits into this bank account are Dr. Grenkoski's payroll deposits from EHC.  The monthly payments for this vehicle are $1,587.68.  Dr. Grenkoski has paid a total of $54,031.12 from account MG-6902 for the purchase of the 2016 Porsche Cayenne.  As of June 15, 2018, the outstanding balance on the Porsche was $3,160.99.  As noted, Dr. Grenkoski's only source of income being deposited into the bank account used to make payments on the vehicle were direct deposits from EHC.  Accordingly, the funds used to make the payments on Dr. Grenkoski's 2016 Porsche Cayenne are traceable to proceeds received from the illegal activity at

38

EHC. Based on the investigator's training and experience, individuals will often purchase assets to hide the true nature and source of proceeds from an illegal activity.

**4.    Accounts Related to Dr. Matthew Rasberry**

55.    The ADP payroll records pertaining to EHC for the years 2014, 2015, 2016, 2017, and 2018 also identified, Doctor Matthew Rasberry, MD (Dr. Rasberry) as an employee of EHC since at least 2014. Undercover visits at the Jacksboro EHC location have also documented Dr. Rasberry as a practicing physician at EHC. The records from ADP further revealed the direct deposits for Dr. Rasberry from EHC were being deposited into Bank of America, account #xxxx2733 (MR-2733). Records obtained from Bank of America indicate Dr. Rasberry received direct deposits from EHC into his personal bank account MR-2733. During the years 2014, 2015, 2016, 2017, and 2018, the ADP records and deposits into MR-2733 indicate Dr. Rasberry has received the following amounts from his employment at EHC:

| Year | Total Amount |
| --- | --- |
| 2014 | $25,477.00 |
| 2015 | $163,393.61 |
| 2016 | $301,198.87 |
| 2017 | $324,064.50 |
| 2018 | $127,052.31 |

56.    Between January 2014 and April 2018, Dr. Rasberry received a total of $941,186.29 from the illegal drug activity occurring at EHC that were deposited into the MR-2733 account. As of May 10, 2018, the ending balance in the MR-2733 account was $471.08. While we believe the majority of the funds

39

deposited in this account are traceable to EHC, investigators have identified significant deposits into this account from other sources (including entities named Team Health and Vista Medical). Given the minimal account balance shown in the most recent records obtained for account MR-2733 and that there are significant other sources of income that have been recently deposited into the account, we are not requesting to seize this account at this time. Instead, I request authority to seize funds in the other accounts listed immediately below into which funds from MR-2733 were transferred.

57.     Given that virtually all of Dr. Rasberry's previous EHC earnings have been withdrawn or transferred from the account, and using an accepted accounting methodology,[10] I submit there is probable cause to believe those proceeds are now located in the following accounts:

(a) ***Bank of America Account #444014166428***.  An analysis of the bank records also revealed that Dr. Rasberry routinely transferred money from his MR-2733 account to his savings account MR-6428. Between February 3, 2014 and March 15, 2018, Dr. Rasberry has transferred $337,419.12 from the MR-2733 account to the MR-6428 account. During this same time period, he transferred $269,520.00 back to MR-2733 account. Funds were also transferred from another of his accounts at Bank of America, MR-2720, to the MR-2733 account. The deposits into MR-2720 came directly from MR-2733

_____

[10] Again, please note that Dr. Rasberry had significant sources of non-EHC income during this time frame, so I do not contend that all of the funds placed in his primary MR-2733 account constituted EHC proceeds. Instead, using an accepted accounting methodology, there is probable cause to believe that funds that were transferred into these other accounts are traceable to proceeds EHC's unlawful activity.

account as well. The current balance in the MR-6428 account as of May 10, 2018 was $91,434. Given that the total amount of proceeds paid to Dr. Rasberry, $941,186.29, far exceeded this balance (and the total amount transferred into the account), there is probable cause to believe any of the remaining funds in this account are EHC proceeds and should be subject to forfeiture.

(b) ***Bank of America Account #444016192720***. An analysis of the bank records indicates between January 15, 2014 and April 20, 2018, Dr. Rasberry transferred $851,242.68 into his Bank of America MR-2720 account from his MR-2733 account. (All of the deposits in this account came from the MR-2733 account.) Dr. Rasberry transferred $160,422.47 from MR-2720 back to MR-2733 during this same time period. This account is primarily used to write checks to the US. Treasury Department. The current balance in MR-2720 was $29,381.22 as of May 10, 2018. As noted, a significant portion of the funds deposited into MR-2733 are illegal funds from the activity conducted at EHC. Given that the total amount of proceeds paid to Dr. Rasberry, $941,186.29, far exceeded this balance (and the total amount transferred into the account), there is probable cause to believe any of the remaining funds in this account are EHC proceeds and should be subject to forfeiture.

(c) ***Merrill Lynch Simplified Employee Pension Plan***. Based on the bank analysis for MR-2733, Dr. Rasberry has written a total of five checks to

41

Merrill Lynch totaling $107,000 between August 26, 2016 and March 15, 2018 from the MR-2733 account. The records further indicate these funds were applied to Simplified Employee Pension plan. Given that all of these transfers occurred after Dr. Rasberry was paid significant sums from EHC's unlawful proceeds, there is probable cause to believe this $107,000 (plus interest and earnings on this amount) should be subject to forfeiture.[11]

Accordingly, I request authority to seize up to that figure from this account.

### 5. Accounts Related to Dr. Eva Misra

58. The ADP payroll records pertaining to EHC for the years 2014, 2015, 2016, 2017, and 2018 also identified, Doctor Eva Misra, MD (Dr. Misra) as an employee of EHC since at least 2014. Undercover visits at the Jacksboro and Harriman locations have also documented Dr. Misra as a practicing physician at EHC. The records from ADP further revealed the direct deposits for Dr. Misra from EHC were being deposited into Home Federal Bank of Tennessee, account #xxxx9263 (EM-9263). Records obtained from Home Federal Bank of Tennessee confirm that Dr. Misra received direct deposits from EHC into her personal bank account EM-9263. During the years 2014, 2015, 2016, 2017, and 2018, the ADP records and deposits into EM-9263 indicate Dr. Misra has received the following amounts from her employment at EHC:

---

[11] Note that although the United States is seeking to seize the entirety of the first two accounts (MR-6428 and MR-2720), this is nonetheless a conservative approach. Based on the most recent balances observed in the accounts, the seizure would amount to less than $250,000, whereas records indicate that Dr. Rasberry was paid $941,186.29 in EHC proceeds.

| Year | Total Amount |
|------|--------------|
| 2014 | $24,106.40 |
| 2015 | $213,435.00 |
| 2016 | $243,904.97 |
| 2017 | $132,624.00 |
| 2018 | $55,727.00 |

59. ***Home Federal Bank of Tennessee Account #299263***.  Between 2014 and April 2018, Dr. Misra has received a total of $669,797. 37 in direct deposits from EHC.  As of July 31, 2018, the ending balance in this account was $300,719.06.  Note that Dr. Misra also made deposits of non-EHC funds in excess of $600,000 into EM-9263 account during the same time period, so I do not contend that all of the funds placed in the 9263 account constitute EHC proceeds.  Instead, using an accepted accounting methodology, there is probable cause to believe that the funds that remain deposited in EM-9263 are traceable to proceeds of EHC's unlawful activity.  As discussed below, investigators have also traced certain transfers by Dr. Misra utilizing these proceeds.  Accordingly, I am only requesting a warrant authorizing the seizure of $432,229.79 after crediting transfers to other accounts as discussed in more detail in the paragraph below.

60. ***Mountain Commerce Account #10129880***.  Records received from Mountain Commerce Bank, Dr. Misra transferred a total of $187,567.58 from EM-9263 (the account into which Dr. Misra's EHC deposits were deposited) to EM-9880.  This $187,567.58 was comprised of two transfers:  (1) one on February 19, 2016 in the amount of $87,567.58; and

43

(2) on August 19, 2016 in the amount of $100,000. The EM-9880 account also had a

$54,589.03 deposit in December 2017 from another of Dr. Misra's Mountain Commerce

accounts, account number #3304. But note there were only two deposits into that EM-3304

account: (1) a $50,000 from EM-9880 on February 19, 2016 (which was derived from Dr.

Misra's EM-9263 account); and (2) a $4,085 deposit from an individual, Todd Wright.

Accordingly, I have calculated the total amount deposited into EM-9880 that was ultimately

transferred from funds from EM-9263 (which held the proceeds from EHC) is $237,567.58:

the $187,567.58 transferred directly from EM-9263 plus the $50,000 transferred through

the EM-3304 account. As such, while the account balance for EM-9880 was $411,161.49

in October 2018, we request to seize only up to $237,567.58 from this account (the amount

deposited into EM-9880 that was ultimately transferred from funds from EM-9263).

### 6. Accounts and Assets Related to Dr. Helen Bidawid

61. ***ORNL Federal Credit Union Account # 2633010***. The ADP payroll

records pertaining to EHC for the years 2014, 2015, 2016, 2017, and 2018 also identified,

Doctor Helen Bidawid, MD (Dr. Bidawid) as an employee of EHC since at least 2014.

Undercover visits at the Jacksboro and Harriman EHC locations have also documented Dr.

Bidawid as a practicing physician at EHC. The records from ADP further revealed the

direct deposits for Dr. Bidawid from EHC were being deposited into an account located at

ORNL Federal Credit Union, account #xxxx3010 (HB-3010). During the years 2014, 2015,

2016, 2017, and 2018, the ADP records and deposits into HB-3010 indicate Dr. Bidawid

has received the following amounts from her employment at EHC:

| Year | Total Amount |
|------|--------------|
| 2014 | $16,477.00 |
| 2015 | $146,380.00 |
| 2016 | $146,646.00 |
| 2017 | $123,330.00 |
| 2018 | $91,107.00 |

62.     Between 2014 and April 2018, Dr. Bidawid has received a total of $523,940 in deposits from EHC. Records obtained from ORNL Federal Credit Union confirm Dr. Bidawid received these sums as direct deposits from EHC into her personal bank account at HB-3010. As of June 30, 2018, the ending balance in this account was $1,777.73. Given that money has been transferred in and out of the account with some frequency, ascertaining the precise balance of the account on the date on which a seizure warrant would be effected is difficult. But given that the EHC proceeds have been regularly placed in these accounts over the course of several years, there is probable cause to believe that any funds in the account on the date the requested warrants are served are subject to forfeiture.

        **7.      Accounts Related to Dr. Stanley Swindell**

63.     ***First National Bank of Oneida Account # 501825***. The ADP payroll records pertaining to EHC for the years 2014, 2015, 2016, 2017, and 2018 also identified, Doctor Stanley Swindell, MD (Dr. Swindell) as an employee of EHC since 2017. During surveillance at the Jacksboro location, investigators have observed Dr. Swindell's vehicle in the EHC parking lot. Furthermore, investigators have conducted vehicle stops on EHC

45

patients shortly after they departed EHC and some of those patients possessed EHC prescriptions signed by Dr. Swindell. Investigators know from payroll records that Dr. Swindell has been employed with EHC since 2017. PMP records indicate that Dr. Swindell most frequently prescribes EHC patients 3 (8mg) doses of Suboxone per day. The records also indicate Dr. Swindell frequently prescribes Neurontin along with Suboxone. On 3/29/18, law enforcement stopped a vehicle shortly after it departed EHC. One of the occupants was in possession of 3 prescriptions signed by Dr. Swindell. Dr. Swindell had prescribed the Kentucky resident 3 doses of Suboxone per day, 3 doses of Neurontin per day and 2 doses of Klonopin per day.

64.     The records from ADP further revealed the direct deposits for Dr. Swindell from EHC were being deposited into an account located at First National Bank of Oneida, account #xxxx1825 (SS-1825). During the years 2017 and 2018, the ADP records and deposits into SS-1825 indicates Dr. Swindell has received the following amounts from his employment at EHC:

| Year | Total Amount |
|------|-------------|
| 2017 | $27,048.00 |
| 2018 | $13,410.00 |

65.     Between 2017 April 2018, Dr. Swindell has received a total of $40,458 in deposits from EHC into the ES-1825 account. Records received from First National Bank of Oneida indicate Dr. Swindell has been receiving direct deposits from EHC since January 15, 2017. The current balance for SS-1825 as of August 31, 2018 was $12,006.80. Note

46

that Dr. Swindell also made deposits of non-EHC funds ES-1825 during the same time period, so I do not contend that all of the funds placed in the 1825 account constitute EHC proceeds. Instead, using an accepted accounting methodology, there is probable cause to believe that the funds that remain deposited in EM-1825 can be traced as proceeds of EHC's unlawful activity. The funds deposited into SS-1825 are therefore forfeitable up to the amount of $40,458. Given that money is transferred in and out of the account, ascertaining the precise balance of the account on the date on which a seizure warrant would be effected is difficult. But given that that EHC proceeds have been placed in this account on several occasions over the course of two years, there is probable cause to believe that the account will contain EHC proceeds on the date the requested warrant is served.

### 8. Accounts Related to Dr. Stephen Cirelli

66. ***Andrew Johnson Bank Account #74538737***. The ADP payroll records pertaining to EHC for the years 2014, 2015, 2016, 2017, and 2018 also identified, Doctor Stephen Cirelli, MD (Dr. Cirelli) as an employee of EHC since at least 2014. Undercover visits at the Harriman EHC location have also documented Dr. Cirelli as a practicing physician. Furthermore, Dr. Cirelli's vehicle has been observed at both EHC locations on multiple occasions.

67. Investigators know from payroll records that Dr. Cirelli has been employed with EHC since 2014. PMP records indicate that Dr. Cirelli most frequently prescribes EHC patients 3 (8mg) doses of Suboxone per day. The records also indicate Dr. Cirelli frequently prescribes Neurontin along with Suboxone. As detailed in SA Jared Sullivan's aforementioned affidavit, PMP records indicate Dr. Cirelli had prescriptions issued on days

47

investigators know Dr. Cirelli was outside of the United States. On 5/18/18, a confidential source had an undercover visit at EHC and met with Dr. Cirelli for approximately 2 minutes. The CS was prescribed 3 doses of Suboxone per day, 3 doses of Neurontin per day as well as a small prescription for Klonopin.

68. The records from ADP further revealed the direct deposits for Dr. Cirelli from EHC were being deposited into an account located at Andrew Johnson Bank, account #xxxx8737 (SC-8737). During the years 2014, 2015, 2016, 2017, and 2018, the ADP records and deposits into SC-8737 indicates Dr. Cirelli has received the following amounts from his employment at EHC:

| Year | Total Amount |
|------|--------------|
| 2014 | $175,469.46 |
| 2015 | $226,419.90 |
| 2016 | $214,961.67 |
| 2017 | $179,981.34 |
| 2018 | $106,592.64 |

69. Between 2014 and April 2018, Dr. Cirelli has received a total of $903,425 in deposits from EHC in account SC-8737.[12] The funds deposited into SC-8737 are therefore

---

[12] Investigators have subpoenaed records from Andrew Johnson Bank but have not yet received records in response. Nonetheless, I assume that that Dr. Cirelli also made deposits of non-EHC funds into this account during the same time period, so I do not contend that all of the funds placed in the SC-8737 account constitute EHC proceeds. Instead, using an accepted accounting methodology, there is probable cause to believe that funds that remain deposited in SC-8737 are traceable to proceeds of EHC's unlawful activity.

48

forfeitable up to the amount of $903,425. Given that money is transferred in and out of the account, ascertaining the precise balance of the account on the date on which a seizure warrant would be effected is difficult. But given that that EHC proceeds have been consistently placed in this account over the course of several years, there is probable cause to believe that the account will contain EHC proceeds on the date the requested warrant is served.

### 9. Accounts Related to Dr. Morgan McClain

70. ***Eastman Credit Union Account # 100792888.*** The ADP payroll records pertaining to EHC for the years 2014, 2015, 2016, 2017, and 2018 also identified, Doctor Morgan McClain, MD (Dr. McClain) as an employee of EHC since at least 2014. While conducting surveillance at the EHC Jacksboro location, investigators have observed Dr. McClain entering/exiting the location. Investigators know from payroll records that Dr. McClain has been employed with EHC since 2014. PMP records indicate that Dr. McClain most frequently prescribes EHC patients 3 (8mg) doses of Suboxone per day. The records also indicate Dr. McClain also frequently prescribes Neurontin along with Suboxone.

71. The records from ADP further revealed the direct deposits for Dr. McClain from EHC were being deposited into an account located at Eastman Credit Union, account #xxxx2888 (MM-2888). During the years 2014, 2015, 2016, 2017, and 2018, the ADP records and deposits into MM-2888 indicates Dr. McClain has received the following amounts from his employment at EHC:

| Year | Total Amount |
|------|--------------|

49

| | |
|---|---|
| 2014 | $23,278.00 |
| 2015 | $83,822.00 |
| 2016 | $68,547.00 |
| 2017 | $58,636.00 |
| 2018 | $19,543,.00 |

72.     Between 2014 and April 2018, Dr. McClain has received a total of $253,826 in deposits from EHC.  Records received from Eastman Credit Union indicate Dr. McClain has been receiving direct deposits from EHC in account MM-2888 since April 2014.  The current balance for MM-2888 as of June 30, 3018 is $6,944.56.   Note that Dr. McClain also made deposits of non-EHC funds into this account during the same time period, so I do not contend that all of the funds placed in the MM-2888 account constitute EHC proceeds. Instead, using an accepted accounting methodology, there is probable cause to believe that the funds that remain deposited in MM-2888 are traceable to proceeds of EHC's unlawful activity.  Because money is transferred in and out of the account, ascertaining the precise balance of the account on the date on which a seizure warrant would be effected is difficult. But given that that EHC proceeds have been consistently placed in this account over the course of several years, there is probable cause to believe that the account will contain EHC proceeds on the date the requested warrant is served. Accordingly, the requested warrant would authorize seizure of up to $253,826 from account MM-2888.

50

## 10. Accounts Related to Dr. Danny Robinson

73. The ADP payroll records pertaining to EHC for the years 2014, 2015, 2016, 2017, and 2018 also identified, Doctor Danny Robinson, MD (Dr. Robinson) as an employee of EHC since December 2016. Undercover visits at the Jacksboro EHC location have also documented Dr. Robinson as a practicing physician at EHC. Investigators know from payroll records that Dr. Robinson has been employed with EHC since 2016. PMP records indicate that Dr. Robinson most frequently prescribes EHC patients 3 (8mg) doses of Suboxone per day. The records also indicate Dr. Robinson frequently prescribes Neurontin along with Suboxone. On 9/16/18, a confidential source had an undercover visit at EHC and met with Dr. Robinson. After a brief and cursory meeting with the CS, Dr. Robinson prescribed the CS 3 doses of Suboxone per day and 3 doses of Neurontin per day.

74. The records from ADP further revealed the direct deposits for Dr. Robinson from EHC were being deposited into an account located at Chase Bank, account #xxxx2604 (DR-2604). During the years 2016, 2017, and 2018, the ADP records and deposits into DR-2604 indicates Dr. Robinson has received the following amounts from his employment at EHC:

| Year | Total Amount |
|------|--------------|
| 2016 | $11,760.54 |
| 2017 | $124,922.75 |
| 2018 | $57,759.90 |

51

75.     Between December 2016 and April 2018, Dr. Robinson has received a total of

$194,443.19 in deposits from EHC.  Records obtained from Chase Bank confirmed Dr.

Robinson has been receiving direct deposits from EHC since December 16, 2016 into the

DR-2604 account.  The proceeds Dr. Robinson received as payroll from ECH are traceable

to the illegal activity occurring at EHC and are forfeitable up to the amount $194,443.19.

The current balance as of August 17, 2018 was $902.23, however, indicating that most of

these proceeds have been withdrawn or transferred to other accounts.  Even though the

account had a relatively small balance in August (the date of the last records obtained by

investigators for this account), I submit that there is nonetheless probable cause to believe

EHC proceeds will be found in the account at the time the requested warrant is effected.  As

noted, investigators have seen that Robinson's EHC paychecks have been consistently

deposited in this account over the course of the last two years.  Accordingly, there is a fair

probability that EHC proceeds[13] will be in the account on the date the requested warrants

are served.

76.     An analysis of the DR-2604 account also identified investment accounts for

Dr. Robinson at Ivy Investments, Pershing LLC, Northwestern Mutual, and Waddell and

Reed Investments.  Given that virtually of Dr. Robinson's previous earnings have been

withdrawn or transferred from the account, and using an accepted accounting methodology,

I submit there is probable cause to believe these EHC proceeds are now located in the

following accounts:

---

[13] In fact, as noted below, one of the only sources of non-EHC income in the 2018
timeframe was a $53,000 deposit of non-EHC funds.  I traced almost all of these funds
($51,000) was transferred to a Northwestern Mutual account shortly thereafter.

(a) ***Ivy Investments***. Dr. Robinson began making monthly payments to Ivy
Investments beginning in March 2018 in the amount of $458.33. These
monthly payments have continued through August 2018. As noted, Dr.
Robinson began receiving payments from EHC in 2016 (and those payments
became more significant in 2017), all of which proceeded these transfers.
Accordingly, there is probable cause to believe the monthly transfers
beginning in March 2018 through the present (nine months of transfers), for a
total of $4,124.97, constitute EHC proceeds. Accordingly, the United States
seeks to freeze this investment account to permit the seizure of up that figure
(plus any associated earnings or interest on that amount).

(b) ***Pershing Brokerage LLC***. Based on the bank records for DR-2604, between
December 16, 2017 and April 16, 2018, Dr. Robinson has transferred $50,500
to Pershing Brokerage. Again, Dr. Robinson began receiving payments from
EHC in 2016 (and those payments became more significant in 2017), all of
which proceeded these transfers to Pershing Brokerage. Accordingly, the
United States seeks to freeze this investment account to permit the seizure of
$50,500 (plus any associated earnings or interest on that amount).

(c) ***Waddell and Reed***. Dr. Robinson has transferred $6,874.95 to Waddell and
Reed Investments between December 15, 2016 and February 15, 2018. These
transfers were monthly payments in the amount of $458.33. Again, Dr.
Robinson began receiving payments from EHC in 2016 (and those payments
became more significant in 2017), all of which proceeded these transfers.

53

Accordingly, the United States seeks to freeze this investment account to permit the seizure of $6,874.95 (plus any associated earnings or interest on that amount).

(d) ***Northwestern Mutual***. Finally, Dr. Robinson has transferred $267,105.50 to Northwestern Mutual between December 15, 2016 and July 18, 2018. I submit there is probable cause to believe that $132,041.04 of this balance is traceable to proceeds from EHC. To arrive at this figure, the amounts transferred to the other accounts listed above (plus the balance of the account in August 2018) were subtracted from the total amount of EHC proceeds paid to Dr. Robinson, 194,443.19. Accordingly, the United States seeks to freeze this investment account to permit the seizure of $132,041.04 (plus any associated earnings or interest on that amount). This approach accounts for the reality that Dr. Robins transferred almost all of the EHC proceeds out of the DR-2604 account, but ensures that only the amount of EHC proceeds[14] are seized.

## 11.    Accounts Relating to Dr. Bobby Lee

77.    ***Iberia Bank Account # 20000990337 LLC***. The ADP payroll records pertaining to EHC for the years 2014, 2015, 2016, 2017, and 2018 also identified, Doctor

---

[14] For instance in March 2018, Dr. Robinson deposited approximately $53,000 of non-EHC funds into his main account, DR-2604, then transferred $51,000 to Northwestern Mutual. Similarly, Dr. Robinson transferred in excess of $80,000 to Northwestern Mutual in February 2018 (which appears to have been comprised of both EHC and non-EHC funds). Accordingly, I do not believe the entire sum in the Northwest Mutual account constitutes EHC proceeds. The approach suggested above would leave at least $135,000 untouched.

Bobby Lee, MD (Dr. Lee) as an employee of EHC since October 2016. Undercover visits at the Jacksboro EHC location have also documented Dr. Lee as a practicing physician at EHC. The records from ADP further revealed the direct deposits for Dr. Lee from EHC were being deposited into an account titled BMFL Enterprises LLC located at Iberia Bank, account #xxxx0337 (BL-0337). Based on the State of Louisiana Secretary of State website, Bobby Lee is the Registered Agent for BMFL Enterprises LLC. During the years 2014, 2015, 2016, 2017, and 2018, the ADP records and deposits into BL-0337 indicate Dr. Lee has received the following amounts from his employment at EHC:

| Year | Total Amount |
|------|--------------|
| 2016 | $26,736.99   |
| 2017 | $140,244.74  |
| 2018 | $58,072.84   |

78.     Between December 2016 and April 2018, Dr. Lee has received a total of $225,054.57 in deposits from EHC. The current balance for BL-0337 as of May 30, 2018 was $49,511.72. Note that Dr. Lee made significant deposits of non-EHC funds (in excess of $650,000 during the same time period), so I do not contend that all of the funds placed in the 0337 account (or even a majority of them) constitute EHC proceeds. Instead, using an accepted accounting methodology, there is probable cause to believe that the amount of funds that remain deposited (and the amounts transferred that are discussed below) constitute EHC proceeds. Further, as discussed below, investigators have traced certain purchases and expenditures Dr. Lee using these proceeds, so I am only requesting a warrant

55

authorizing the seizure of up to $91,497.57 after crediting transfers to other accounts as discussed in more detail in paragraphs below.

79. ***Iberia Bank Account # 3000103824.*** An analysis of the BL-0337 account revealed transfers from BL-0337 to another account held by Dr. Lee's at Iberia Bank, Account #xxxx3824 (BL-3824). Between January 25, 2017 and April 10, 2018, the total amount of transfers from BL-0337 to BL-3824 was $77,000. The current balance for BL-3824 as of May 30, 2018 was $35,512.12. Using the accounting methods previously discussed, there is probable cause to believe the proceeds deposited into BL-3824 are traceable to his payroll received for the illegal activity occurring at EHC and is forfeitable up to the amount of $77,000, the amount transferred from BL-0337.

80. Investigators also identified investment accounts for Dr. Lee at Pershing Brokerage LLC and Northwestern Mutual. Given that the majority of Dr. Lee's previous earnings have been withdrawn or transferred from the account, I submit there is probable cause to believe the proceeds are now located in the following accounts:

(a) ***Northwestern Mutual.*** Between October 2016 and May 2018, Dr. Lee has transferred $52,813.50 to Northwestern Mutual. Based on an analysis of BL-0337, Dr. Lee is making two monthly payments to Northwestern Mutual ISA Payment. The amounts were originally $1,000 and $1,514.56 each month. Then on November 2, 2017, the monthly payments changed to $1,000 and $2,085.87 each month. Given that these transfers occurred during the time period Lee was receiving significant payments from EHC, there is probable cause to believe $52,813.50 of EHC proceeds are now in this account.

56

Accordingly, the United States seeks to freeze this investment account to permit the seizure of $52,813.50 (plus any associated earnings or interest on that amount).

(b) ***Pershing Brokerage LLC***. Between October 2016 and May 2018, Dr. Lee has transferred a total of $3,744 to Pershing LLC. Based on BL-0337 account, Dr. Lee is making monthly payments of $288 to Pershing LLC. Given that these transfers occurred during the time period Lee was receiving significant payments from EHC, there is probable cause to believe $3,744 of EHC proceeds are now in this account. Accordingly, the United States seeks to freeze this investment account to permit the seizure of $3,744 (plus any associated earnings or interest on that amount).

**12.       Accounts Related to Dr. Erin Hood**

81.    ***Knoxville TVA Employee Credit Union Account #65314696-70***. The ADP payroll records pertaining to EHC for the years 2016, 2017, and 2018 also identified, Doctor Erin Hood, MD (Dr. Hood) as an employee of EHC since January 2016. Undercover visits and surveillance at the Jacksboro EHC location have also documented Dr. Hood as a practicing physician at EHC. Investigators know from payroll records that Dr. Hood has been employed with EHC since 2016. PMP records indicate that Dr. Hood most frequently prescribes EHC patients 3 (8mg) doses of Suboxone per day. The records also indicate Dr. Hood frequently prescribes Neurontin along with Suboxone. On 3/9/18, a confidential source had an undercover visit at EHC and met with Dr. Hood. After a brief and cursory meeting with the CS, Dr. Hood Robinson prescribed the CS 3 doses of

57

Suboxone per day and 3 doses of Neurontin per day. Dr. Hood also provided the CS with a pre-signed prescription for Klonopin written by Dr. Herrell, although the CS did not meet with Dr. Herrell.

82.     The records from ADP further revealed the direct deposits for Dr. Hood from EHC were being deposited into an account located at Knoxville TVA Credit Union, account #xxxx4696 (EH-4696). During the years 2016, 2017, and 2018, the ADP records and deposits into EH-4696 indicate Dr. Hood has received the following amounts from her employment at EHC:

| Year | Total Amount |
| --- | --- |
| 2016 | $12,231.10 |
| 2017 | $57,319.00 |
| 2018 | $20,122.00 |

83.     Between December 2016 and April 2018, the ADP records show that Dr. Hood has received a total of $89,672.10 in deposits from EHC. The current balance in EH-4696 as of May 31, 2018 was $31,512.82 for EH-4696 account. Note that Dr. Hood made deposits of non-EHC funds in excess of $80,000 during the same time period, so I do not contend that all of the funds placed in the EH-4696 account constitute EHC proceeds. Instead, using an accepted accounting methodology, there is probable cause to believe that the funds that remain deposited into EH-4696 are traceable to proceeds EHC's unlawful activity. Further, given that that EHC proceeds have been consistently placed in this account over the course of several years, there is probable cause to believe that the account

58

will contain EHC proceeds on the date the requested warrant is served. In order to ensure that the seizure does not include funds beyond the EHC proceeds, the United States only seeks authority to seize up to $89,672.10 from EH-4696.

### 13.     Accounts Related to Dr. Robert Dukes

84.     ***United Community Bank Account #1310***.  The ADP payroll records pertaining to EHC for the years 2015, 2016, 2017, and 2018 also identified, Doctor Robert Dukes, MD (Dr. Dukes) as an employee of EHC since 2015.  Undercover visits at the Harriman EHC locations have also documented Dr. Dukes as a practicing physician at EHC.  The records from ADP further revealed the direct deposits for Dr. Dukes from EHC were being deposited into an account located at United Community Bank, account #1310 (RD-1310). During the years 2015, 2016, 2017, and 2018, the ADP records indicates Dr. Dukes has received the following amounts from his employment at EHC:

| Year | Total Amount |
|------|--------------|
| 2015 | $23,542.00   |
| 2016 | $88,165.00   |
| 2017 | $69,426.00   |
| 2018 | $29,776.00   |

85.     Between 2015 and April 2018, Dr. Dukes has received a total of $210,909 in deposits from EHC in account RD-1310.[15]  These funds constitute the proceeds of EHC's

---

[15] Investigators have not yet obtained records from United Community Bank for this account.  Accordingly the figures referenced in this section are based upon records obtained from ADP, which investigators believe contain an accurate accounting of the amounts paid

unlawful activity. Because money is likely transferred in and out of the account, ascertaining the precise balance of the account on the date on which a seizure warrant would be effected is difficult. But given that that EHC proceeds have been repeatedly placed in this account over the course of several years, there is probable cause to believe that the account will contain EHC proceeds on the date the requested warrant is served. In order to ensure that the seizure does not include funds beyond the EHC proceeds, the United States only seeks authority to seize up to $210,909 from account RD-1310.

## CONCLUSION

86.    Based on the above, I believe in good faith that there is probable cause to believe that ROBERT TAYLOR and others have engaged in criminal conduct by unlawfully distributing controlled substances (and conspiring to do to the same) in the Eastern District of Tennessee and elsewhere, in violation of 21 U.S.C. §§ 846 and 841(a) (1) and engaged in money laundering in violation of and 18 U.S.C. §§ 1956 and 1957.

87.    Based upon the above information, there is probable cause to believe that the property sought for seizure in the accompanying Seizure Warrant Applications represent proceeds of trafficking in controlled substances and are therefore subject to forfeiture pursuant to 21 U.S.C. §§ 853 and 881. Additionally, some of the property was involved in violations of 18 U.S.C. §§ 1956 or 1957, and therefore also forfeitable pursuant to 18 U.S.C §§ 981 and/or 982. Given that these funds and assets are subject to forfeiture, the Court

---

to EHC employees. Nonetheless, I assume that that Dr. Dukes also made deposits of non-EHC funds into this account during the same time period, so I do not contend that all of the funds placed in the RD-1310 account constitute EHC proceeds. Instead, using an accepted accounting methodology, there is probable cause to believe that funds that remain deposited in RD-1310 are traceable to proceeds of EHC's unlawful activity.

may issue warrants authorizing their seizure under 18 U.S.C. §§ 981(b) and 982, as well as 21 U.S.C. § 853(e) and (f) and 18 U.S.C. § 982. To the extent that the Subject Funds are not the actual monies traceable to or involved in the illegal activities identified herein, the government alleges that these funds are identical property found in the same account as the property traceable to or involved in the illegal activities, rendering these funds subject to forfeiture pursuant to 18 U.S.C § 984.

88.     The events described herein, and the location of the businesses and properties in question occurred and are situated in the Eastern District of Kentucky and elsewhere, to include the Eastern District of Tennessee.

89.     Accordingly, pursuant to 18 U.S.C. § 981(b)(1)(3), "a seizure warrant may be issued . . . by a judicial officer in any district in which the forfeiture action against the property may be filed under section 1355(b) of Title 28, and may be executed in any district in which the property is found." 18 U.S.C. § 981(b)(3).

90.     The above-statement is true and correct to the best of my knowledge, and I request that the seizure warrants be issued for the above-described properties.

FURTHER THIS AFFIANT SAYETH NOT

_____
Crystal Centers, Special Agent
Internal Revenue Service Criminal Investigation Division

Subscribed to and sworn before me, this the ___12___ day of December, 2018.

_____
United States Magistrate Judge
Eastern District of Tennessee

61